# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

ARMOUR LYLE JOLLEY,
Appellant,

v.

UNKNOWN NAMED BOP DIRECTORS, *et al.*,
Appellees.

On Appeal from the United States
District Court for the District of Columbia

## BRIEF FOR APPELLEES

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

CARLOS ANDINO
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 815-8752

Civ. A. No. 22-2580      *Attorneys for the United States of America*

## CERTIFICATE AS TO
## PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**Parties and Amici.** The plaintiff-appellant is Armour Lyle Jolley. The defendants-appellees are "Unknown Named BOP Directors," "Unknown Named BOP Employees," Antonelli, Ballesteros, an "Administrative Remedy Coordinator," Nylen, and Blanko. There is no amicus curiae.

**Ruling Under Review.** Jolley appeals from the March 22, 2024, memorandum opinion and order by Judge Colleen Kollar-Kotelly granting the defendants' motion to dismiss. The opinion is available in the appendix (A.143) and on Westlaw: *Jolley v. Unknown Named BOP Directors*, Civ. A. No. 22-2580 (CKK), 2024 WL 1240091 (D.D.C. Mar. 22, 2024).

**Related Cases.** This case has not previously been before this Court. Undersigned counsel is unaware of any pending related cases.

# TABLE OF CONTENTS

**Heading**                                                          **Page**

Certificate as to  Parties, Rulings, and Related Cases ............................ i

Table of Contents ....................................................................... ii

Table of Authorities ................................................................... iv

Glossary ................................................................................ viii

Introduction ............................................................................ 1

Jurisdictional Statement ............................................................... 4

Statutes and Regulations ............................................................... 4

Statement of Issues .................................................................... 4

Counterstatement of the Case .......................................................... 6

         A.      Legal Background ................................................. 6

         B.      Factual Background ............................................... 8

         C.      Prior Proceedings ............................................... 13

Summary of the Argument ............................................................... 17

Standard of Review .................................................................... 20

Argument .............................................................................. 20

I.      The District Court Correctly Dismissed Jolley's *Bivens* Claims ... 20

         A.      *Bivens* Does Not Extend to First Amendment Retaliation Claims ........................................................... 20

B.    Even Assuming Relief Under *Bivens* Was Available, the District Court Correctly Found Jolley Failed to Properly State a Claim...........................................................22

C.    The District Court Appropriately Found It Lacked Personal Jurisdiction............................................................26

D.    The District Court Rightly Concluded that Qualified Immunity Applies..................................................28

E.    Jolley Failed to Allege Facts Showing a Direct Involvement by BOP Directors...................................................31

II.    The District Court Correctly Dismissed Jolley's Due Process Claims.........................................................................32

A.    The District Court Properly Recognized Jolley Lacks a Liberty Interest in Inmate Classification.............................33

B.    The District Court Correctly Concluded that Assignment to ADX Florence Did Not Violate Jolley's Due Process Rights.35

III.    The District Court Appropriately Dismissed Jolley's Claims of Cruel and Unusual Punishment. ....................................40

IV.    The District Court Properly Denied Jolley's Request for Appointment of Counsel................................................42

Conclusion ...........................................................................44

Certificate of Compliance ...................................................45

Certificate of Service ..........................................................45

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. al-Kidd*
563 U.S. 731 (2011) ............................................................. 29, 30

*Anderson v. Creighton*
   483 U.S. 635 (1987) ............................................................. 29

*Aref v. Lynch*
   833 F.3d 242 (D.C. Cir. 2016) .......................... 19, 34, 35, 36

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .............................................................. 6

*Bame v. Dillard*
   637 F.3d 380 (D.C. Cir. 2011) ........................................... 30

*Bell v. Wolfish*
   441 U.S. 520 (1979) ............................................................ 40

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*
   403 U.S. 388 (1971) ........................................................ 6, 21

*Buchanan v. Barr*
   71 F.4th 1003 (D.C. Cir. 2023) ...................... 2, 18, 21, 22, 23

*Carlson v. Green*
   446 U.S. 14 (1980) ............................................... 6, 21, 36, 38

*Clark Cnty. Sch. Dist. v. Breeden*
   532 U.S. 268 (2001) ............................................................ 24

*Corr. Servs. Corp. v. Malesko*
   534 U.S. 61 (2001) ............................................................ 6, 7

*Crane v. N.Y. Zoological Soc'y*
    894 F.2d 454 (D.C. Cir. 1990) .............................................. 26

*Davis v. Passman*
    442 U.S. 228 (1979) ...................................................... 6, 21

*Dist. of Columbia v. Air Fla., Inc.*
    750 F.2d 1077 (D.C. Cir. 1984) ............................................ 33

*District of Columbia v. Wesby*
    583 U.S. 48 (2018) .......................................................... 30

*Egbert v. Boule*
    596 U.S. 482 (2022) ................................................... 7, 8, 22

*Estelle v. Gamble*
    429 U.S. 97 (1976) .......................................................... 41

*Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*
    566 U.S. 318 (2012) ......................................................... 25

*Foman v. Davis*
    371 U.S. 178 (1962) ..................................................... 30, 31

*Gaviria v. Reynolds*
    476 F.3d 940 (D.C. Cir. 2007) ............................................. 43

*GTE New Media Servs. Inc. v. BellSouth Corp.*
    199 F.3d 1343 (D.C. Cir. 2000) ............................................ 27

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982) ........................................................ 29

*Hernandez v. Velasquez*
    522 F.3d 556 (5th Cir. 2008) .............................................. 35

*Hernández v. Mesa (Hernández II)*
    589 U.S. 93 (2020) ........................................................... 8

*Hewitt v. Helms*
459 U.S. 460 (1983) ............................................................... 39

*Hill v. Pugh*
75 F. App'x 715 (10th Cir. 2003) ........................................ 42

*Hutto v. Finney*
437 U.S. 678 (1978) ............................................................. 41

*Isby v. Brown*
856 F.3d 508 (7th Cir. 2017) .............................................. 40

*James Madison Ltd. v. Ludwig*
82 F.3d 1085 (D.C. Cir. 1996) ........................................... 30

*Johnson v. District of Columbia*
528 F.3d 969 (D.C. Cir. 2008) ........................................... 30

*Jolley v. Unknown Named BOP Directors*
Civ. A. No. 22-2580 (CKK), 2024 WL 1240091 (D.D.C. Mar. 22, 2024) i

*Jones v. Greninger*
188 F.3d 322 (5th Cir. 1999) .............................................. 23

*Jones v. U.S. Secret Serv.*
701 F. Supp. 3d 4 (D.D.C. 2023) ........................... 22, 23, 26

*King v. Jackson*
487 F.3d 970 (D.C. Cir. 2007) ........................................... 20

*Kowal v. MCI Commc'ns Corp.*
16 F.3d 1271 (D.C. Cir. 1994) .............................................. 9

*Lacy v. D.C.*
424 A.2d 317 (D.C. 1980) ................................................... 32

*Mathews v. Eldridge*
424 U.S. 319 (1976) ............................................................. 38

*McNeil v. Dep't of State*
  No. 21-5161, 2022 WL 4349598 (D.C. Cir. Sept. 20, 2022) ................ 33

*Nieves v. Bartlett*
  587 U.S. 391 (2019) ............................................................................. 23

*Owens v. BNP Paribas, S.A.*
  897 F.3d 266 (D.C. Cir. 2018) ............................................................. 9

*Rhodes v. Chapman*
  452 U.S. 337 (1981) ................................................................ 40, 41, 42

*Sandin v. Conner*
  515 U.S. 472  (1995) ............................................................................. 34

*Scurlock v. Samuels*
  No. 12-5245, 2014 WL 590559 (D.C. Cir. Feb. 10, 2014) ............. 18, 28

*Simpkins v. District of Columbia Government*
  108 F.3d 366 (D.C. Cir. 1997) .................................................. 16, 17, 32

*United States v. Ferrara*
  54 F.3d 825 (D.C. Cir. 1995) .............................................................. 27

*Wilkinson v. Austin*
  545 U.S. 209 (2005) ........................................................ 36, 38, 39, 40

*Willis v. FBI*
  274 F.3d 531 (D.C. Cir. 2001) .................................................. 20, 30, 42

*Wilson v. Seiter*
  501 U.S. 294 (1991) ............................................................................. 41

*Ziglar v. Abbasi*
  582 U.S. 120 (2017) .......................................................... 7, 8, 21, 22

Statutes

5 U.S.C. § 701-706 ................................................................................. 33

28 U.S.C. § 1291 ..................................................................... 4

28 U.S.C. § 1331 ..................................................................... 4

42 U.S.C. § 1331(a) ................................................................ 4

D.C. Code § 13-422 ............................................................... 26

**Rules**

Fed. R. App. P. 32(a)(7)(B) ................................................. 46

# GLOSSARY

A............................................ Appendix

ADX..................................... Administrative Maximum Facility

BOP or Bureau ................... United States Bureau of Prisons

Computation Center........... the Bureau's Designation / Sentence Computation Center

USP...................................... United States Penitentiary

**INTRODUCTION**

Plaintiff Armour Lyle Jolley is a federal inmate housed at the Administrative Maximum Facility in Florence, Colorado ("ADX Florence") since January 2022. Prior to his assignment at ADX Florence, Jolley was assigned to several other federal prisons from 2017 through 2021. According to Jolley's allegations, while Jolley was held at United States Penitentiary ("USP") Victorville in 2017, an agent of the Federal Bureau of Investigation asked to interview him about a 2013 homicide connected to the Aryan Brotherhood. Jolley rejected this request but subsequently agreed to meet with an attorney representing a suspect in the murder investigation. Jolley claims that, because he met with a criminal defense attorney and not law enforcement officers, he was retaliated against by prison officials, unjustly validated as a member of the Aryan Brotherhood, and eventually transferred to a maximum-security prison without due process.

Jolley asserts a *Bivens* claim alleging that his First Amendment rights were violated when prison officials retaliated against him by providing false evidence causing him to be validated as a member of the Aryan Brotherhood. But this Court has held "[t]here is no *Bivens* action

for First Amendment retaliation, and the Supreme Court has never recognized the availability of *Bivens* claims for First Amendment violations." *Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023). In any event, Jolley's complaint is bereft of allegations plausibly supporting the alleged retaliation. Not only does Jolley fail to allege sufficient facts to show retaliatory motivation by prison officials, but his allegations also fail to demonstrate causation because he does not allege facts showing that any alleged retaliatory actions resulted in his validation as a gang member.

Jolley also fell short of the pleading standard when attempting to assert that his due process rights were violated when he was validated as a gang member and transferred to ADX Florence. Jolley neither identified a recognized liberty interest in his classification while in federal custody nor pleaded sufficient facts to allege his prison transfer was not attended by due process. His various attempts to close these gaps on appeal fail.

Jolley's attempts to establish jurisdiction over individual-capacity defendants and overcome affirmative defenses also fail for a variety of reasons. Systemically, Jolley's complaint deficiently alleged facts to show

that any individual defendant's actions were responsible for his alleged injuries. Further, Jolley was unable to allege sufficient facts to identity violations of clearly established law to overcome qualified immunity. Moreover, Jolley failed to establish the district court's personal jurisdiction over several defendants, with no alleged contacts with the District of Columbia beyond employment at a federal agency headquartered in the District.

Jolley's Eighth Amendment claims similarly fail to allege adequate facts that his assignment to ADX Florence is a cruel and unusual punishment departing from the expectations of confinement. Nor is Jolley able to establish that the district court abused its discretion in not appointing civil counsel upon finding Jolley sufficiently capable of asserting his claims.

Therefore, the order of the district court dismissing this case without prejudice should be affirmed.

# JURISDICTIONAL STATEMENT

Jolley invoked the district court's subject matter jurisdiction under 28 U.S.C. § 1331.[1] Am. Compl. (R.24-1) at 3, A.24 The district court granted Defendants' motion to dismiss on March 22, 2024. ("Mem. Op."). Jolley filed a timely notice of appeal on April 17, 2024, within the sixty days allowed under Federal Rule of Appellate Procedure 4(a)(1)(B)(iv). (R.42). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

# STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in an addendum submitted herewith.

# STATEMENT OF ISSUES

In the opinion of the United States, the questions presented are:

1.    Whether the district court properly dismissed Jolley's First Amendment claims based on this Court's previous findings that such claims are not available under *Bivens*.

---

[1]    Jolley cites 42 U.S.C. § 1331(a) in his appellate brief to assert subject matter jurisdiction. Jolley Br. at 1. Given 42 U.S.C. § 1331(a) was repealed, appellees assume Jolley seeks to assert the district court's jurisdiction under 28 U.S.C. § 1331.

2.     Whether the district court correctly concluded the Jolley failed to adequately plead a due process violation under the Fifth Amendment for his validation as a gang member and transfer to ADX Florence.

3.     Whether the district court correctly concluded it lacked personal jurisdiction over Defendants Blanco, Nylen, Antonelli, and Ballesteros where they did not avail themselves of the court's jurisdiction beyond employment with a federal agency headquartered in the District of Columbia.

4.     Whether the district court correctly granted qualified immunity to Defendants Blanco, Nylen, Antonelli, and Ballesteros.

5.     Whether the district court correctly dismissed claims against Federal Bureau of Prison Directors who lacked personal involvement in Jolley's allegations for failure to properly state a claim.

6.     Whether the district court correctly determined Jolley failed to sufficiently plead facts that his assignment to ADX Florence departed beyond expectations of incarceration in violation of the Eighth Amendment.

7.    Whether the district court abused its discretion in holding that appointment of counsel on behalf of Jolley was not warranted.

## COUNTERSTATEMENT OF THE CASE

## I.    **Legal Background**

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). *Bivens* held that, despite the absence of a statutory cause of action, federal law-enforcement officials could be sued for money damages for conducting a warrantless search and arrest in a person's home, accompanied by the excessive use of force, in violation of the Fourth Amendment. *Bivens*, 403 U.S. at 389. The Supreme Court has approved an implied damages remedy under the Constitution only two other times, in *Davis v. Passman*, 442 U.S. 228 (1979), for an equal-protection violation involving sex discrimination in congressional-staff employment, and in *Carlson v. Green*, 446 U.S. 14 (1980), for an Eighth

Amendment violation involving the failure to treat an inmate's asthma, resulting in his death.

Since then, "the Court has not implied additional causes of action under the Constitution," and has "emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quotation marks omitted); *see also Ziglar v. Abbasi,* 582 U.S. 120, 133 (2017) (explaining that "a private cause of action will not be created through judicial mandate"). Since that "notable change in the Court's approach to recognizing implied causes of action," the Court has " 'consistently refused to extend *Bivens* to any new context or new category of defendants.' " *Abbasi*, 582 U.S. at 135 (quoting *Malesko*, 534 U.S. at 68).

The Supreme Court's recent decision, *Egbert*, confirmed that a court should undertake a two-part test to determine whether it can create a new cause of action against federal officials in their personal capacities. First, a court must determine whether the claim arises in a " 'new *Bivens* context' " by determining whether the case is " 'meaningful[ly]' different from" the three previous *Bivens* cases in which the Supreme Court has recognized a damages action. *Egbert*, 596 U.S. at 492 (alteration in

original; quoting *Abbasi*, 582 U.S. at 139). Second, if the case arises in a new context, the court must consider whether any special factors "indicat[e] that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Abbasi*, 582 U.S. at 136). "If there is even a single 'reason to pause'" the court cannot allow the *Bivens* claim to proceed. *Id.* (quoting *Hernández v. Mesa*, 589 U.S. 93, 102 (2020)). In asking whether special factors counsel hesitation, a court gives important weight to "'separation-of-powers principles'" and "consider[s] the risk of interfering with the authority of the other branches." *Hernández*, 589 U.S. at 102 (quoting *Abbasi*, 582 U.S. at 135). This inquiry "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. In most cases, the answer to that question will be an emphatic "yes." *See id.* at 493.

## II. <u>Factual Background</u>

Because the district court resolved this case at the pleading stage, the below background summarizes the allegations in the amended complaint accepted as true (though not admitted), *Kowal v. MCI*

8

*Commc'ns Corp.*, 16 F.3d 1271, 1273 (D.C. Cir. 1994), and facts in public documents of which the Court may take judicial notice, *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018).

Jolley is a federal inmate housed at the Administrative Maximum Facility in Florence since January 2022. Am. Compl. (R.24-1) ¶ 7, A.31. According to the amended complaint in this case, Jolley asserts his wrongful designation as a member of the Aryan Brotherhood led to his placement in ADX Florence, giving rise to his claims in this matter. Jolley's original complaint does not provide "first names" for these named defendants. Compl. (R.1) at 5, A.12. Jolley also lists several "unknown named BOP" officials and employees as defendants. *Id*. at 4, A.11.

In 2017, Jolley was a federal inmate housed at USP Victorville, California. *Id*. ¶ 22, A.33. While there, an agent of the Federal Bureau of Investigation, "accompanied by Special Investigative Supervisor Tech Toronas," visited Jolley and asked to interview him about "a 2013 homicide case connected to the Aryan Brotherhood." *Id*. ¶ 22, A.33. Jolley "declined to be interviewed." *Id.*, A.28. On March 23, 2017, Jolley allegedly did meet "with an attorney representing the [person] accused of this homicide." *Id*. ¶ 23, A.34. "Shortly after," a photograph of a cup

9

containing Aryan Brotherhood symbolism was entered into Jolley's prison record, which Jolley asserts was wrongfully done in retaliation by a prison official known as Tech Blanko. *Id.*, A.34. Jolley did not receive any discipline, a disciplinary incident report, or hearing pertaining to the cup. *Id.*, A.34.

In 2018, Jolley was transferred to USP Beaumont, Texas. Compl. (R.1) at 8, A.13. While at Beaumont, Jolley was contacted by a friend, a member of the Aryan Circle, who recruited, with a prison official known as Tech Nylen's encouragement, Jolley's assistance mediating a conflict between the Aryan Brotherhood and the Aryan Circle, due to Jolley's friendships with members of both gangs. *Id.*, A.13.

Two years later, in October 2020, Jolley learned that he had been classified by an unknown official at the Bureau's Washington, D.C. Central Office as a member of the Aryan Brotherhood. *Id.* at 9, A.14. Jolley blames this classification on Tech Nylen and Tech Blanko. *Id.* at 10, A.15. Jolley did not receive notice or an opportunity to be heard prior to the classification. *Id.*, A.15.

On November 4, 2020, Jolley was transferred to USP Coleman, Florida. *Id.* at 10, A.15. In January 2021, Jolley began the administrative

process to try to have his Aryan Brotherhood classification removed. *Id.*, A.15. This process consisted of a written request to Warden Antonelli, followed by an appeal to the Regional Director. *Id.* at 10, 14, A15, 19. On July 12, 2021, Jolley's final administrative appeal was denied by National Inmate Appeals based on a determination that the classification was justified under Bureau policy and pursuant to an investigation. Compl. (R.1) at 10, A.15.

In April 2021, an investigation was conducted into claims that members of the Aryan Brotherhood were planning an assault with the aim of starting a Bureau-wide race war. Compl. (R.1) at 13, A.18. As a result of that investigation, Jolley and others were removed from the general prison population, placed into the Special Housing Unit, and further recommended for transfer to ADX Florence in Colorado. *Id.* As part of the process to determine whether to transfer Jolley to ADX Florence, per Bureau policy, Dr. Ballesteros conducted a mental health evaluation of him on June 8, 2021. *Id.*, A.18. Dr. Ballesteros produced a written report, which Jolley claimed contains multiple severely damaging and false claims concerning Jolley's criminal history and which is now a part of his prison record. *Id.*at 13-14, A.18-19.

On August 18, 2021, Jolley appeared at his ADX Placement Hearing. Compl. (R.1) at 15-16, A.20-21. The next day, the Assistant Director of Correctional Programs ruled that Jolley would in fact be transferred to ADX Florence. *Id.*, A.21.

Beginning on August 31, 2021, Jolley made attempts to appeal the ADX placement decision by sending a BP-10 form to the Designation / Sentence Computation Center (the "Computation Center") through the outgoing inmate mail system.[2] *Id.* at 16, A.21. On November 4, 2021, Jolley's BP-10 form was rejected because he had submitted it to the wrong office. *Id.*, A.21 On some date between November 4, 2021, and January 2022, Jolley was transferred to ADX Florence. *Id.* at 17, A.22.

Today, Jolley remains housed at ADX Florence. *Id.* at 3, A.8. His amended complaint asserts that his placement there is the result of his wrongful classification as a member of the Aryan Brotherhood, and that such wrongful classification was brought about without prior notice or an opportunity to be heard, in violation of his due process rights. *Id.* at 6,

---

[2] Although it is unclear, Jolley appears to challenge the handling of his BP-10 form by an unknown coordinator at the Computation Center, prior to his transfer to ADX Florence. Compl. (R.1) at 17, A.21. It is also unclear what legal claim Jolley makes as to the handling of the form.

A.11. Jolley also challenges Dr. Ballesteros's report, which he blames in part for the decision to transfer him to ADX Florence, but the legal basis for the challenge is unclear. Jolley further claims that having to reside at ADX Florence violates his liberty interests and Eighth Amendment right against cruel and unusual punishment, because he cannot move around as freely as he might in a lower-security facility. *Id*. at 18-19, A.23-24.

## III.  **Prior Proceedings**

Jolley brought this civil action against several named and unknown Bureau officials, all of whom are named individually and in their official capacities, seeking injunctive relief and monetary damages. Jolley sought relief from defendants in their individual capacity under *Bivens*. He claimed his classification by the Bureau as a member of the Aryan Nation and consequently his placement in ADX Florence, are a violation of his due process rights and his right to be free from cruel and unusual punishment under the Constitution.[3] Further, Jolley asserted that

---

[3]    Jolley states generally that his Eighth and Fourteenth Amendment Rights have been violated. Defendants assume Jolley is alleging that his placement at ADX Florence violates his right to be free from cruel and unusual punishment. And because Jolley brings this action against the federal government and various individuals in their capacities as federal officials, Defendants interpret his due process claims as being brought under the Fifth, instead of the Fourteenth, Amendment.

defendants violated his First Amendment rights by engaging in retaliation for his refusal to meet with federal law enforcement officials. Finally, Jolley's appeal attempts to raise new claims that defendants violated the Administrative Procedure Act by failing to abide by Bureau policies prior to designation as a member of Aryan Nation and placement at ADX Florence. Op. Br. at 8.

The district court dismissed Jolley's *Bivens* claims against defendants on multiple jurisdictional grounds and held that there was no *Bivens* remedy available for Jolley's claims. Indeed, despite deriving its findings from both Jolley's initial and amended complaints and finding that Jolley's amended complaint suffered from the same defects as the original complaint, the district court granted plaintiff leave to file an amended complaint.

First, the district court found it lacked personal jurisdiction under Rule 12(b)(2) over individual Defendant Technicians Blanco (USP Victorville) and Nylen (USP Beaumont), Warden Antonelli (USP Coleman), and Dr. Ballesteros (USP Coleman). Mem. Op. (R.40) at 14, A.156. The district court additionally concluded that, to the extent Jolley asserted claims against the "Unknown Named BOP Administrative

Remedy Coordinator . . . at the [Computation Center i]n Grand Prairie, Texas," it lacked personal jurisdiction for similar reasons. Mem. Op. 14, A.156 (citing Am. Compl. (R.24-1) ¶ 11, A.32.).

Second, the district court dismissed Jolley's First Amendment claim arising from the alleged retaliation of Special Investigative Supervisor Blanco for Jolley having chosen to speak with the attorney representing the person accused of murder and having refused an interview with an FBI agent. *Id*. at 16, A.158. The district court concluded that, even if personal jurisdiction existed over Defendants Blanco, Nylen, Antonelli, and Ballesteros, there is no cognizable *Bivens* claim against them for an alleged violation of Jolley's First Amendment rights. *Id*. A.158.

The district court also concluded that, insofar as Jolley demands compensatory damages, Defendants Blanco, Nylen, Antonelli, and Ballesteros were protected by qualified immunity. *Id*. Regarding Jolley's claim that his classification as a member of the Aryan Brotherhood violated his due process rights, the district court concluded there is no clearly established right to any classification of an inmate. *Id*. at 18, A.160. Further, the district court concluded, even if such a liberty interest existed, Jolley had not adequately alleged that Defendants Blanco,

Nylen, Antonelli, or Ballesteros were responsible for the determination that led to Jolley's classification. *Id.* at 19, A.161. Consequently, the district court held these defendants could not have been liable for violating Jolley's Fifth Amendment rights, when the gang validation giving rise to the claim was not their action. *Id.* at 20, A.162.

The district concluded, on similar grounds, that Defendants Blanco, Nylen, Antonelli, and Ballesteros were entitled to qualified immunity from *Bivens* claims arising from Jolley's allegations that his placement at ADX Florence violated his due process rights. *Id.*, A.162. The district court reached this conclusion by finding "law is clear that a prisoner has no protected interest in his place of incarceration." *Id.*, A.162.

Third, the district court found Jolley failed to allege any Bureau Director was personally involved in designating him in the Aryan Brotherhood or to ADX Florence. *Id.* at 23, A.165. Therefore, the district court reasoned, citing this Court's opinion in *Simpkins v. District of Columbia*, 108 F.3d 366, 369 (D.C. Cir. 1997), that Jolley's *Bivens* claims against the Bureau Directors failed. Mem. Op. (R.40) at 23, A.165.

Lastly, the district court addressed and rejected all claims against Defendants in their official capacities. Observing that such claims are

treated as claims directly brought against the United States, the district court concluded that sovereign immunity barred any claims for monetary damages. *Id*. at 24, A.166. Additionally, the district court concluded, even assuming Jolley engaged in protected First Amendment activity, he failed to plausibly state actions taken by Defendants were motivated by his protected activity. *Id*. at 26, A.168. Further, the district court reasoned Jolley did not plausibly state Defendants' action did not advance a legitimate penological objective. *Id*., A.168. Finally, the district court concluded Jolley's cruel and unusual punishment claim failed to properly assert the conditions at ADX Florence departed what a prisoner could expect after having been convicted, sentenced, and incarcerated. *Id*. at 27, A.169. Therefore, each of Jolley's claims against Defendants required dismissal. This appeal followed.

## SUMMARY OF THE ARGUMENT

This Court has held "[t]here is no *Bivens* action for First Amendment retaliation, and the Supreme Court has never recognized the availability of *Bivens* claims for First Amendment violations." *Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023). This alone compelled dismissal of Jolley's First Amendment *Bivens* claims.

Further, under controlling precedent, a plaintiff must allege sufficient factual matter, not mere conclusions, to state a claim that is plausible on its face. Jolley's arguments on appeal do not show that he met this requirement. Even assuming Jolley could assert a valid First Amendment retaliation claim under *Bivens*, he fails here to assert facts sufficient to infer actions by prison officials were motivated by retaliation.

Additionally, Jolley did not allege sufficient contacts by Defendants Blanco, Nylen, Antonelli, and Ballesteros to establish the district court's personal jurisdiction over them. Rather, Jolley only alleged contacts inherent in their employment by a federal agency headquartered in the District of Columbia. This Court has previously held that fact insufficient to establish personal jurisdiction. *Scurlock v. Samuels*, No. 12-5245, 2014 WL 590559 (D.C. Cir. Feb. 10, 2014) (per curiam).

Separately, Jolley failed to overcome the qualified immunity defenses of Defendants Blanco, Nylen, Antonelli, and Ballesteros. Specifically, Jolley's claims under *Bivens* and the Fifth Amendment not only fail to identify a legitimate liberty interest, but Jolley is also unable to identify any plausible violations of clearly established law.

Jolley does not allege any facts to demonstrate actions by any prison director resulted in the injuries claimed in his lawsuit. Therefore, Jolley is unable to establish how such Defendants are liable for the claims asserted.

Similarly to his first claim, Jolley's due process claims fail under clearly established caselaw that inmates have no liberty interest in their classification by prison officials. *Aref v. Lynch*, 833 F.3d 242, 255-56 (D.C. Cir. 2016) ("Circuit courts have also consistently held that, 'generally speaking, a prisoner has no liberty interest in his custodial classification.'" (internal quotations omitted)). Further, even assuming a viable liberty interest in his assignment to ADX Florence, Jolley did not state a cognizable claim that Defendants violated his due process rights. Rather, Jolley's alleged facts demonstrate that the process followed by prison officials provided due process.

Additionally, Jolley failed to meet his burden of alleging sufficient facts to state a claim that his placement at ADX Florence constituted cruel and unusual punishment. As the district court properly found, Jolley fail to allege facts to show his conditions of confinement surpass the expectations of imprisonment associated with his conviction.

Lastly, Jolley is unable to overcome the high burden necessary to show the district court abused its discretion in its refusal to appoint counsel. As the record shows, the district court adequately considered all applicable factors under the local rules to determine Jolley had sufficiently demonstrated his ability to well plead his claims.

## STANDARD OF REVIEW

This Court reviews the district court's grant of defendant's motion to dismiss de novo. *King v. Jackson*, 487 F.3d 970, 972 (D.C. Cir. 2007). This Court reviews a district court's determination not to appoint civil counsel on an abuse of discretion standard. *Willis v. FBI*, 274 F.3d 531, 532 (D.C. Cir. 2001).

## ARGUMENT

I.    **The District Court Correctly Dismissed Jolley's *Bivens* Claims.**

A.    ***Bivens* Does Not Extend to First Amendment Retaliation Claims.**

The Supreme Court has made clear that expanding *Bivens* to a new context is a "disfavored judicial activity." *Abbasi*, 582 U.S. at 135 (quotation marks omitted). The Court has recognized a *Bivens* action in only three contexts: for a warrantless search and seizure and use of excessive force in a home in violation of the Fourth Amendment, *Bivens*,

403 U.S. 388; for sex discrimination by a member of Congress in violation of the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and for a failure to provide adequate medical treatment to a prisoner for a life-threatening medical condition in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980).

Under the *Abbasi* framework, a context is "new" when "the case is different in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court." *Abbasi*, 582 U.S. at 139. As this Court has explained, "[w]hat constitutes a 'new context' is exceedingly broad," *Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023), and it is a threshold that is "easily satisfied," *Abbasi*, 582 U.S. at 149. The Supreme Court has previously stated that meaningful differences include "the rank of the officers involved[,] the constitutional right at issue," "the statutory or other legal mandate under which the officer was operating," and "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 582 U.S. at 140. In short, as *Abbasi* noted, "even a modest extension is still an extension" for purposes of the new-context analysis. *Id.* at 147.

Applying precedents from the Supreme Court and this Court, the district court correctly held that "[t]here is no *Bivens* action for First Amendment retaliation, and the Supreme Court has never recognized the availability of *Bivens* claims for First Amendment violations." Mem. Op. (R.40) at 15, A.152. (quoting *Jones v. U.S. Secret Serv.*, 701 F. Supp. 3d 4, 14 (D.D.C. 2023) (citing *Egbert*, 596 U.S. at 499; *Buchanan v. Barr*, 71 F.4th at 1008 (D.C. Cir. 2023)). Jolley does not meaningfully dispute this holding, rather he appears to acknowledge that his First Amendment claims are not "covered under *Bivens*." Jolley Br. at 9. He presents no persuasive reason for expanding the remedy. For this reason alone, the district court's order dismissing Jolley's First Amendment *Bivens* claims should be affirmed.

**B.     Even Assuming Relief Under *Bivens* Was Available, the District Court Correctly Found Jolley Failed to Properly State a Claim.**

Jolley disputes the district court's conclusion that he failed to allege that any retaliation resulting from his March 23, 2017, meeting with a murder suspect's counsel, even assuming it was protected First Amendment activity, caused Jolley an injury. *Id*. at 12 (citing Mem. Op. (R.40) at 26, A.168). Jolley asserts on appeal that actions taken by prison

officials after his March 23, 2017, meeting to include evidence in his prison file "contributed" to his eventual Aryan Brotherhood classification. *Id*. Jolley acknowledges that his only supporting allegation for his claim of retaliation rests on its temporal proximity to his meeting with the defense counsel. *Id*. at 13, A.155.

The district court correctly found, and Jolley offers no counter argument, that such timing inferences alone do not state a retaliation claim. Mem. Op. (R.40) at 26, A.168. (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *see* also *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). As the district court noted, the classification of Jolley as a member of the Aryan Brotherhood took place over two years after the alleged protected activity. *Id*. A time frame well outside "very close" proximity demanded by the Supreme Court. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Further, even accepting Jolley's argument that Defendant Blanco's documentation of the cup bearing gang symbols "contributed" to his classification, Jolley fails to assert any facts to suggest that absent Defendant Blanco's actions, an "unknown BOP official" would have not nevertheless validated Jolley as a gang member. Am. Compl. (R.24-1) ¶ 28, A.32 Furthermore, Jolley fails to

assert that other evidence that contributed to his classification had any

relation to his alleged protected First Amendment activity, such as

Jolley's participation in gang related negotiations over a year later or any

other evidence contained in his prison file. *Id.* ¶¶ 35-37, A.33. Rather, as

the district court correctly noted, Jolley attempts to invoke necessary

causation on personal belief alone. Mem. Op. (R.40) at 26, A.168.[4]

Nor does Jolley refute the district court's finding that he failed to

allege that an investigation into an inmates' possible gang membership

does not advance a legitimate penological objective. *Id.* (citing *Harbin-

Bey v. Rutter*, F3.d 571, 576 (6th Cir. 2005) (finding a "policy directive

regarding the classification of inmates as STG members is rationally

related to the legitimate state interest of maintaining order in the

prison."); *see also Florence v. Bd. of Chosen Freeholders of Cnty. of

Burlington*, 566 U.S. 318, 331 (2012). Indeed, Jolley admits Defendants

possess such a legitimate interest. Jolley Br. at 13. Instead, Jolley baldly

---

[4] To the extent Jolley attempts to argue his First Amendment claim should be evaluated against Defendants in their official capacity, his claims continue to fail for the above state reasons. Specifically, for failure to sufficiently allege facts to establish Defendants actions were motivated by retaliation against a protected activity or that such retaliation caused his purported injury.

disagrees with the district court's reasoning that his classification was based on a legitimate interest without identifying any supporting allegations in his pleadings. *Id.* These unsupported assertions by Jolley are insufficient to show Defendant's investigation and classification of gang members does not advance a legitimate penological objective.

Moreover, while Jolley cites two Ninth Circuit cases for the notion that prison officials cannot justify prohibited retaliatory actions under any legitimate correctional goal, Jolley Br. at 14, his reliance on these cases is unavailing. As noted above, Jolley has failed to allege sufficient facts to establish Defendants may have engaged in retaliatory actions.

Jolley's brief also asserts the district court incorrectly dismissed his claims for monetary damages against the United States under sovereign immunity, while also stating "[P]laintiff never specifically requested money relief." Jolley Br. at 8. To the extent the Court finds that Jolley does in fact seek monetary damages relief against the United States, it should affirm the district court's dismissal of those claims as barred by sovereign immunity. Mem. Op. (R.40) at 24.

## C. The District Court Appropriately Found It Lacked Personal Jurisdiction.

Even assuming Jolley had asserted sufficient facts to plead his *Bivens* claim against these individual Defendants, the district court appropriately found it lacked personal jurisdiction in this matter. A plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). Here, the district court correctly identified the two ways it may exercise jurisdiction over an individual. Mem. Op. (R.40) at 11, A.153. First, a District of Columbia court "may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. Here, however, Jolley acknowledged these defendants do not reside in the District of Columbia, *see* Pl.'s Opp'n (R.29) at 28, A.119, and therefore this general jurisdiction provision did not apply.

Second, a court may exercise personal jurisdiction over a non-resident if two criteria are met: the District of Columbia's long-arm statute applies and the court finds that its exercise "of jurisdiction satisfies the constitutional requirements of due process." *GTE New*

*Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995), *amended* (July 28, 1995)). The district court correctly determined the second prong of this test does not apply to Defendants Blanco, Nylen, Antonelli and Ballesteros. Mem. Op. (R.40) at 14, A.156.

Jolley's sole allegation to suggest satisfaction of this second prong is that these Defendants are employed by, and therefore have some employment related contacts with, a federal agency headquartered in Washington, D.C. Jolley Br. at 29-30. Jolley does not attempt to identify additional Defendant contacts with the District of Columbia for the Court's consideration in his appeal. *Id.* Rather, he requests the Court grant "a single evidentiary hearing or requested discovery" to establish the district court's personal jurisdiction over Defendants. *Id.* However, Jolley provides no indication to suggest that such discovery would uncover contacts relevant to the jurisdictional inquiry.[5]

---

[5] Jolley additionally requests the court to transfer this matter to the District of Colorado, without providing any basis for how such court would have jurisdiction over Defendants alleged to be located in California, Texas, and Florida.

As the district court correctly noted, it is well established that a defendant's status as a government employee who works for an agency headquartered in Washington, D.C., is insufficient to subject them to personal jurisdiction in this district. Mem. Op. (R.40) at 13, A.155, (citing *Scurlock v. Lappin*, 870 F. Supp. 2d 116, 121 (D.D.C. 2012), *aff'd*, No. 12-5245, 2014 WL 590559 (D.C. Cir. Feb. 10, 2014) (per curiam)). With no other alleged contacts by Defendants Blanco, Nylen, Antonelli, and Ballesteros with the District of Columbia, the district court was proper in dismissing these claims.

## D. The District Court Rightly Concluded that Qualified Immunity Applies.

The district court correctly found Defendants Blanco, Nylen, Antonelli, and Ballesteros (none of whom were served or appeared in the district court) are entitled to qualified immunity. Mem. Op. (R.40) at 16-22, A.158-161.

To overcome a defense of qualified immunity, a plaintiff must plead facts showing: (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The operation of the

"clearly established" standard "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

The Supreme Court has explained, for example, that although "the right to due process of law is quite clearly established by the Due Process Clause," that level of generality is too high for purposes of qualified immunity because "there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right." *Id.* The same can "be said of any other constitutional or statutory violation." *Id.* Instead, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. This does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

Indeed, the "clearly established" requirement demands a high degree of specificity: the legal principle must "clearly prohibit the officer's

conduct in the particular circumstances" he or she confronted. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). In other words, the law must be "clear enough that every reasonable official" in the officer's shoes "would understand that what he [or she] is doing is unlawful." *Id.* at 590. In that vein, in determining whether the state of the law was "clearly established" at the time of the action complained of, "'we look to cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view'—if there is one." *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011) (quoting *Johnson v. District of Columbia*, 528 F.3d 969, 976 (D.C. Cir. 2008)).

Here, the district court appropriately recognized that Jolley raised a due process claim, requiring him to first identify a "denial of liberty interest." Mem. Op. (R.40) at 17, A.154 (citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing *Foman v. Davis*, 371 U.S. 178, 181-82 (1962))). As such, the district court correctly analyzed and rejected the two theories of clearly established law that Jolley claimed Defendants had violated: (1) Jolley's classification by Bureau officials as a member of a gang organization and (2) Jolley's assignment to ADX Florence.

As explained below, Jolley's claims fail to adequately identify a denial of liberty interest in his classification as a member of the Aryan Brotherhood or his assignment to ADX Florence. Further, as illustrated below, Jolley has failed to support his argument that his rights violated any clearly defined law. Equally important, even assuming a present liberty interest in classification, Jolley continues to fail to identify any allegations asserting that Defendants Blanco, Nylen, Antonelli and Ballesteros were responsible for his classification or assignment to ADX Florence. Jolley Br. at 32. At most, Jolley argues "Ballesteros and Antonelli . . . were partly responsible" in classification and later placement at ADX Florence. *Id*. The district court properly concluded, however, based on Jolley's allegations, that none of these Defendants were directly responsible for Jolley's classification. Mem. Op. (R.40) at 20, A.162. Without demonstrating otherwise, Jolley cannot hold these Defendants liable for an injury that was not caused by their action. *Lacy v. District of Columbia*, 424 A.2d 317, 319 (D.C. 1980).

### E.  Jolley Failed to Allege Facts Showing a Direct Involvement by Bureau Directors.

Regarding remaining individual defendants, Jolley's appeal does not attempt to identify any factual allegations supporting his claims that

the Bureau Director defendants were directly involved in his validation as an Aryan Brotherhood member or ADX assignment. Jolley Br. at 30. The district court properly cited precedent under *Bivens* that requires a plaintiff to allege how officials themselves acted unconstitutionally. Mem. Op. (R.40) at 23, A.165. The district court also citing this Court's precedent that "*Bivens* claims cannot rest merely on respondent superior." *Id*. (citing *Simpkins*, 108 F.3d at 369).

As the district court properly observed, Jolley does not allege any foundation to support any Bureau Director was personally involved in assessing Jolley's gang membership or assignment transfer. *Id*. Without identifying any such allegations in his complaint or on appeal, Jolley continues to provide no basis to establish liability against Bureau Director defendants under *Bivens*.

## II.   The District Court Correctly Dismissed Jolley's Due Process Claims.

The district correctly dismissed Jolley's due process claims on two grounds: (1) Jolley failed to refute clearly established caselaw that inmates have no liberty interest in their classification by prison officials and (2) Jolley failed to allege facts sufficient to show that Defendants

failed to provide an adequate process regarding his transfer to ADX Florence.

### A. The District Court Properly Recognized Jolley Lacks a Liberty Interest in Inmate Classification.

Jolley first asserted "a liberty interrest [sic] in avoiding gang validation[]," Pl.'s Opp'n to Mot. Dismis (R.29) at 20 A.111, and "an interest in avoiding the collateral consequences that flow from gang validation."[6] *Id.* at 36, A.127. In support of this stated liberty interest, Jolley alleged that inmate classification can mean that inmates' "movements are tracked by officials, conduct is monitored and they are automatically branded a threat to prison safety, subjected to specialized treatment among inmates by virtue of the validation, thus also making

---

[6] Jolley's appeal attempts to raise new claims that the alleged infringement of his due process rights violates the Administrative Procedure Act, 5 U.S.C. § 701-706. Jolley Br. at 27. Jolley forfeited any such claim by declining to assert it in the district court *see* Compl. (R.1), *see also* Am. Compl. (R.24-1), A.28, and he may not present them for the first time on appeal, *see District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal."). This notion holds for pro se litigants. *McNeil v. Dep't of State*, No. 21-5161, 2022 WL 4349598, at *1 (D.C. Cir. Sept. 20, 2022).

the validated inmate a target for enemies of that gang." *Id.* at 40-41, A.131-132.

Jolley argues the district court erred in finding he had no such liberty interests by asserting "he was deprived the entire due process required by BOP policy in . . . the wrongful disruptive group validation." Jolley Br. at 32. As the district court correctly observed, however, the Bureau policies identified by Jolley are irrelevant to determining the existence of a liberty interest.

To establish a liberty interest triggering due process requirements, the Supreme Court has held a plaintiff must assert well-pled allegation to show the conditions amount to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Aref*, 833 F.3d at 252 (quoting *Sandin v. Conner*, 515 U.S. 472 484 (1995)). Absent a liberty interest, an inmate is not entitled to any process. *Id.* at 252.

Jolley makes no effort to refute the district court's holding that "it has been held repeatedly that prisoners have no constitutional right to any specific classification." Mem. Op. (R.40) at 18, A.160. Nor does Jolley resist the district court's conclusion that inmates possess no liberty

interest in validation as members of a gang. *Id.* at 19, A.161. This is because controlling caselaw from this circuit is clear. As this Court has recognized "[c]ircuit courts have also consistently held that, 'generally speaking, a prisoner has no liberty interest in his custodial classification.'" *Aref*, 833 F.3d at 255–56 (quoting *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008)).

## B. The District Court Correctly Concluded that Assignment to ADX Florence Did Not Violate Jolley's Due Process Rights.

Jolley argues a protected liberty interest in his assignment, or avoiding assignment, to ADX Florence, *see* Jolley Br. at 26, *see also* Am. Compl. (R.24-1) ¶ 89, A.40; Pl.'s Opp'n (R.29) at 25, A.116, which allegedly happened "without as much procedural due process as [he] should have had." Am. Compl. (R.24-1) ¶ 89, A.40. This Court has recognized that, "while 'the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement,' a lesser liberty interest 'in avoiding particular conditions of confinement may arise" if *Sandin's* requirements are met.'" *Aref*, 833 F.3d at 256 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221-22

(2005)).[7] Regardless whether this lesser liberty interest applies, Jolley has failed to plead a violation of his due process rights.

Jolley's pleadings describe the process provided to him prior to his assignment at ADX Florence. Am. Compl. (R.24-1), Ex. C at 27. Jolley admits he was provided a Notice of Hearing on Referral for Transfer to ADX Florence General Population. *Id*. at 26-28. The stated basis provided for Jolley's assignment was:

> On April 7, 2021, an SIS [Special Investigative Supervisor] investigation was completed and it was determined that [plaintiff is] an "Aryan Brotherhood" Member, and [he was] a willing participant who possessed direct knowledge of a planned assault, and assisted in the facilitation of a potential agencywide racial war. Due to inmate JOLLEY's knowledge of the planned assault, and [his] propensity for future disruptive acts, [he had] rendered [himself] a management concern. [He] show[ed he] pose[s] significant threat to others which disrupts the orderly running of a main line institution.

Mem. Op. (R.40) at 31, A.144. Jolley attended a hearing regarding his assignment on August 18, 2021, *see* Compl. (R.1) at 15, A.20, and his

---

[7]    This Court has concluded previously under *Sandin* that factors in determining whether a liberty interest exists include: (i) the conditions of confinement relative to administrative segregation, (ii) the duration of that confinement generally, and (iii) the duration relative to length of administrative segregation routinely imposed on prisoners serving similar sentences. *Aref*, 833 F.3d at 255.

placement at ADX in general population was approved on August 19, 2021, Am. Compl. (R.24-1) ¶ 68, A.37. On September 9, 2021, *id.* ¶ 69, A.37, Jolley received the ADX General Population Hearing Administrator's Report, *see generally id.*, Ex. D at 30-34, A.58-62, which advised him of his right to appeal "through BOP's Administrative Remedy Program, using a Regional Administrative Remedy Appeal (BP-10) form . . . sent to the [Computation Center at the Bureau's] Grand Prairie Complex, U.S. Armed Forces Reserve Complex, 346 Marine Forces Drive, Grand Prairie, Texas 75051," *id.*, Ex. D at 34, A.62. The experience described by Jolley's allegations directly follows the Bureau policy he now cites in his due process argument. Jolley Br. at 26.

Jolley asserts violation of his Due Process rights occurred when "at no fault of his own, [P]laintiff's administrative appeal was never reviewed or heard, although this critical process should be afforded to every similarly situated prisoner." *Id.* at 27. Jolley contends his appeal was improperly rejected, twice, on the basis it was sent to the incorrect Bureau office. Am. Compl. (R.24-1) at 10, A.36. The district court was correct, however, to conclude that even had Bureau officials erred in the handling of his post-placement grievance, such conduct did not deprive

him of due process with respect to the underlying subject matter of the assignment to ADX Florence. Mem. Op. (R.40) at 20, A.162.

In a prison context, "the requirements of due process are flexible and [call] for such procedural protections as the particular situation demands." *Wilkinson*, 545 U.S. at 224 (alteration in original, internal quotation marks omitted). In evaluating the sufficiency of the process afforded in this context, courts balance three concerns outlined by the Supreme Court: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Assuming, again for the sake of argument, Jolley has a liberty interest in his avoidance of assignment to ADX Florence, that interest is considerably lessened by his status as an inmate, *see Hewitt v. Helms*, 459 U.S. 460, 473 (1983), and easily outweighed by *Mathews* two other factors.

When considering the second *Mathews* factor, the three traditional hallmarks of fair process in this context include (1) "notice of the factual

basis" for the deprivation; (2) "a fair opportunity for rebuttal"; and (3) periodic review of the exigency of ongoing confinement. *Wilkinson*, 545 U.S. at 225–226. By his own allegations, Jolley admits he was accorded all three. First, Jolley admits to being provided notice of the factual basis for his assignment to ADX Florence upon receiving Notice of Hearing on Referral for Transfer to ADX Florence General Population on August 14, 2021. Am. Compl. (R.24-1) at 8-9, A.34-35. Second, Jolley admits to a fair opportunity for rebuttal upon his attendance of the hearing regarding his assignment on August 18, 2021. Compl. (R.1) at 15, A.20. Jolley offers no indication that such hearing was insufficient or in violation of his due process rights. Finally, Jolley makes no claim that he has not been afforded periodic review of his ongoing assignment to ADX Florence.

The final factor to be weighed under *Mathews* is the government's interest, including "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Wilkinson*, 545 U.S. at 225. A factor that weighs heavily in favor of Defendants here, considering a Bureau investigation determined Jolley "assisted in the facilitation of a potential agency wide race war." Am.

Compl. (R.1), Ex. C at 27; *see also Isby v. Brown*, 856 F.3d 508, 526 (7th Cir. 2017) ("Maintaining institutional security and safety are crucial considerations in the management of a prison, and, to the extent that an inmate continues to pose a threat to himself or others, ongoing segregation may well be justified." (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979))); *see also Wilkinson*, 545 U.S. at 227 ("In the context of prison management, [the government's] interest is a dominant consideration.").

By Jolley's own allegations, the Bureau's process afforded him due process satisfying his constitutional rights. Therefore, the district court was correct in dismissing his due process claims.

## III.   The District Court Appropriately Dismissed Jolley's Claims of Cruel and Unusual Punishment.

The Eighth Amendment prohibits punishments that, "although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (cleaned up). "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). Courts have found such deprivation where confinement conditions amounted to the

denial of medical care, *Estelle v. Gamble*, 429 U.S. 97 (1976), serious overcrowding, *Hutto v. Finney*, 437 U.S. 678 (1978), and indeterminate periods of confinement in punitive isolation, i*d.* By contrast, conditions that are merely restrictive and even harsh, but do not rise to the level of denying the minimal civilized measure of life's necessities, are not unconstitutional. Rather, they are simply "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.

As the district court properly concluded, Jolley's allegations fail to assert his assignment to ADX Florence was "a departure from what a prisoner could expect after have been convicted, sentenced and incarcerated." Mem. Op. (R.40) at 27, A.169. Rather than arguing his condition of confinement violated the Eighth Amendment, Jolley's appeal focuses on the combination of his "almost 3 years . . . in solitary confinement at ADX [Florence]" with his allegation that placement at ADX Florence was based on "retaliation of officials." Jolley Br. at 33-34. This argument conflates protections against cruel and unusual punishment with First Amendment protections against retaliation. Even were Jolley's retaliation claims viable, Jolley still bears the burden to

allege the conditions of his confinement "involve the unnecessary and wanton infliction of pain . . . or are grossly disproportionate to the severity of the crime." *Rhodes*, 452 U.S. at 346 (internal quotations and citations omitted). None of the hardships alleged in Jolley's pleadings amount to cruel and unusual punishment under the Eighth Amendment. Compl. (R.1) at 12 & 18-19, A.19, 25-26. Thus, even assuming Jolley's allegations to be true, the district court correctly held he failed to state a claim for which relief can be granted. *See Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003).

## IV. The District Court Properly Denied Jolley's Request for Appointment of Counsel.

This Court has held "the discretionary decisions of district courts whether to appoint counsel . . . will be set aside only for abuse." *Willis v. FBI*, 274 F.3d 531, 532 (D.C. Cir. 2001). The district court correctly identified that appointment of counsel for a civil litigant is permissible, though not guaranteed, under the Local Civil Rules. Order (R.18) at 1 (Mar. 7, 2023), A.27. In considering Jolley's request for counsel, the district court examined the four applicable factors:

    (i)     Nature and complexity of the action;

    (ii)    Potential merit of the pro se party's claims;

(iii)   Demonstrated inability of the pro se party to retain counsel by other means; and

(iv)   Degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of the appointed counsel.

LCvR 83.11(b)(3). In weighing these factors, the district court found "[n]otwithstanding [P]laintiff's lack of legal training, he articulates his legal claims clearly and otherwise appears capable of pursuing his claims on his own." Order at 2, A.28.

Jolley attempts to attack the district court's decision not to appoint counsel by stating "he remains in solitary confinement with limited access to legal materials, [and] he suffer with a myriad of health issues that make day to day functioning difficult." Jolley Br. at 35. However, this Court has previously found it sufficient for a district court to rely on its review of a litigant's briefing to determine their ability to articulate claims and litigate their case, with consideration of the factors in the Local Rules, to determine a lack of appointed counsel does not offend the interests of justice. *Gaviria v. Reynolds*, 476 F.3d 940, 944 (D.C. Cir. 2007). In its review of multiple filings by Jolley, the district court was able to conclude that Jolley claims had been reasonably fleshed out and

properly held that the assistance of counsel was not necessary to ensure their fair consideration.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

*/s/ Carlos Andino*
CARLOS ANDINO
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 815-8752

*Attorneys for the United States of America*

Dated: December 20, 2024

## CERTIFICATE OF COMPLIANCE
### (Fed. R. App. P. 32(a)(7)(B))

This brief is prepared using 14-point Century Schoolbook, a proportionally spaced font and—omitting those items described in Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1)—contains 9,711 words as counted by Microsoft Word 365.

*/s/ Carlos Andino*
CARLOS ANDINO
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on this 20th day of December, 2024,, I caused a true and correct copy of the above brief to be served upon all counsel of record by filing the brief using the Court's ECF system.

*/s/ Carlos Andino*
CARLOS ANDINO
Assistant United States Attorney